UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NORTHERN GROUP, INC.,

    Plaintiff,

v.                                          Case No. 17-C-1367

TECH 4 KIDS INC.,

    Defendant.

**DECISION AND ORDER**

This action arises out of a 2008 oral agreement between a toy manufacturer, Tech 4 Kids, Inc. (T4K) and a company hired to help drive sales for the toys produced, Northern Group, Inc. Northern Group alleges it is owed post-termination commissions from T4K for sales made and payments received from customers whose orders were obtained through Northern Group's efforts. Northern Group asserts claims of breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, and violations of Wisconsin's statute regarding the payment of commissions to independent sales representatives, Wis. Stat. § 134.93. The parties have diverse citizenship, and the amount in controversy exceeds $75,000. Federal jurisdiction therefore exists under 28 U.S.C. § 1332.

T4K has filed a motion for judgment on the pleadings, asserting that all four claims should be dismissed. T4K argues that because the breach of contract claim fails under Wisconsin's statute of frauds, so too must the claim for breach of the implied duty of good faith and fair dealing since that claim is dependent on the first. T4K also asserts that the statutory claim fails because Northern Group does not qualify as an "independent sales representative" under the statute's definition and

the statute does not provide for post-termination commissions. T4K lastly asserts that Northern Group's unjust enrichment claim suffers a similar fate because it does not question the validity of the 2008 oral agreement between the parties. Northern Group has filed a motion for leave to file a sur-reply. For the reasons given below, Northern Group's motion for leave to file a sur-reply will be granted and T4K's motion for judgment on the pleadings will be granted in part and denied in part.

## BACKGROUND

Northern Group is a Wisconsin corporation that contracts with manufacturers, producers, and suppliers to develop marketing strategies and promotions to market the suppliers' products to third-party retailers and drive their sales. At times, this requires Northern Group to meet with a retailer's representatives to discuss the supplier's products and encourage the retailer to carry these goods in its stores and on its websites. In exchange for these services, Northern Group receives a commission based upon a percentage of the total sales the supplier makes to the retailer.

In 2008, T4K and Northern Group orally agreed that Northern Group would provide sales and marketing services to T4K in exchange for commission. T4K, a foreign corporation which maintains its principal office in Ontario, Canada, produces and distributes children's toys and entertainment products created to spark the imagination of children. Part of the 2008 oral agreement involved Northern Group marketing T4K's products to large chain retailers and other department stores across the United States. Northern Group secured contracts to sell T4K's products with various retailers, including Walgreens, Kmart, Shopko, Mills Fleet Farm, Blaine's Farm and Fleet, and Kohl's. Securing these contracts to sell involved numerous meetings, presentations, telephone conferences, email exchanges, travel, and the creation of "planograms." As Northern Group puts it, the process required substantial investment of time and resources.

2

Pursuant to the agreement, T4K was to pay Northern Group 4% of the net sales price of products purchased by large chain retailers by check or money order on a quarterly basis. In October 2016, T4K advised Northern Group, in writing, that the agreement would be terminated effective December 31, 2016. T4K asserts that it sought termination after discovering that Northern Group started a competing North American company and refused to discontinue alleged wrongful conduct. Northern Group alleges that the agreement was wrongfully terminated and T4K owes it commissions from orders and commitments procured while the parties were still under contract. Northern Group alleges that it is owed commissions of at least $100,000 per year for the years 2017 and 2018. Additionally, Northern Group alleges that commissions will continue to accrue as additional sales are made and payments are received by T4K as a result of Northern Group's efforts.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have been closed. *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Courts apply the same standard in deciding a motion for judgment on the pleadings as they do in deciding a motion to dismiss. *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). The facts are viewed in the light most favorable to the non-movant. *Id*. To survive a motion to dismiss or for judgment on the pleadings, the challenged pleading must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).

**ANALYSIS**

**A. Breach of Contract**

Northern Group alleges that T4K is in breach of its oral agreement regarding commissions because T4K refuses to pay Northern Group the commissions it earned before T4K terminated the agreement. Northern Group also contends that T4K breached the duty of good faith and fair dealing that are implied in every contract under Wisconsin law. T4K, on the other hand, contends that Northern Group's breach of contract claim, as well as its breach of the implied duty of good faith and fair dealing, fail because the underlying contract is void under Wisconsin's statute of frauds.

Wisconsin's statute of frauds states, "Every agreement that by its terms is not to be performed within one year from the making thereof" is void "unless such agreement or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith." Wis. Stat. § 241.02(1)(a). There is no dispute that the contract Northern Group alleges T4K breached was oral. T4K argues that the allegations of the complaint, as well as Northern Group's response to T4K's counterclaims, establish that the agreement was not to be and could not have been performed within a year. It thus follows, T4K contends, that the alleged contract is void and Northern Group's claims for breach fail.

The parties do not discuss choice of law issues here, so the court will apply the law of Wisconsin, the forum state. *See FutureSource LLC v. Reuters Limited*, 312 F.3d 281, 283 (7th Cir. 2002). Under Wisconsin law, a contract that is not in writing is void if it could not have been performed within a year. In other words, the question is not whether the contract was performed within a year or even whether the parties anticipated that it would be performed within a year. The Wisconsin Supreme Court has long interpreted the language of the statute to mean "'[i]f, by

4

possibility, an agreement may by its terms, be executed within [one year], it is not within the statute.'" *Nelsen v. Farmers Mut. Auto. Ins. Co.*, 4 Wis. 2d 36, 52, 90 N.W.2d 123 (1958) (quoting *Jilson v. Gilbert*, 26 Wis. 637, 642 (1870)). Only if the contract is by its terms incapable of being performed within a year is it void. *Id.*

In *Nelsen*, the court held that an oral contract under which the plaintiff was to be paid commissions on policies of insurance he sold for the defendant company for as long as the company sold policies in the agent's district was not void under the statute of frauds because it could have been performed within the year. The court explained:

> Appellant contends that Nelsen's own testimony establishes the fact that the parties were making a contract for long duration—that it was understood that the building up of the district agency was a slow process, that Nelsen would have no immediate substantial returns from his investment of time and money and that the only substantial returns were contemplated for years in the future. This does not mean, however, that the contract was incapable of performance within a year from the time it was entered into. The contract was to be continued until the Insurance Company discontinued writing insurance in Nelsen's district or until Nelsen discontinued operating in the district. Conceivably, either of these contingencies might have occurred within the year.

*Id.* Similarly, in *Dow v. Shoe Corp. of America*, 276 F.2d 165, 166 (7th Cir. 1960), the court held that an oral agreement for lifetime employment as a shoe salesman was not void under Wisconsin's statute of frauds because the plaintiff could have died within a year of the contract's inception. *See also Miller v. Magnetek, Inc.*, 334 F. Supp. 2d 1104, 1111 (E.D. Wis. 2004) ("In the present case, the 1970 agreement—which allegedly obliged Louis Allis to provide plaintiffs with health insurance coverage for life—could have been performed within one year if plaintiffs had died within a year of its formation. Thus, the 1970 agreement is not within the statute of frauds, and plaintiffs' breach of contract claim is not barred because of the absence of a writing."); *Metro. Liquor Co. v. Heublein,*

5

*Inc.*, 276 F. Supp. 946, 950 (E.D. Wis. 1969) (holding that oral distributorship contract that had been in effect for 20 years not void under statute of frauds because it could have been terminated for poor performance within first year).

In light of the foregoing authority, T4K's argument that its contract with Northern Group is void under Wisconsin's statute of frauds fails. Although the complaint does allege that the retailer agreements Northern Group arranged generally required a lengthy process and sometime took years, the question is not the time it actually took to perform the contract, but whether it could have been performed within a year. Northern Group could have arranged sales agreements with retailers within a year and been paid its commission. The fact that T4K had developed a practice of paying commissions quarterly, does not mean it was not possible to pay more promptly. By its terms, the contract was terminable at will by either party, and thus either party could have quickly concluded that continuation was not in its interest.

I conclude that the contract was capable of being performed within a year and it is therefore not void under the statute of frauds. T4K's motion to dismiss Northern Group's breach of contract claim is therefore denied, and there is no reason to address Northern's alternative argument under the "procuring cause doctrine." To the extent Northern Group's breach of the duty of good faith and fair dealing constitutes a claim separate from its breach of contract claim, it also survives.

**B. Unjust Enrichment**

In Wisconsin, unjust enrichment is a legal cause of action governed by equitable principles. The claim is "grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303 (1987). "To prevail on an unjust-enrichment claim, a plaintiff must prove three

elements: '(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.'" *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (quoting *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, 236 N.W.2d 227 (1975)). Generally, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Cont'l Casualty Co. v. Wis. Patients Comp. Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (1991). This is because the parties have already bargained for the terms each is willing to accept, and no third person's sense of justice should upset the agreement into which they have freely entered. Unjust enrichment is not a means for improving the terms of a valid contract.

In this case, Northern Group asserted in its complaint a claim of unjust enrichment in the alternative to its claim for breach of contract. This was entirely proper. *See Cromeens, Hollowman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("Under that doctrine, a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative."); *see also Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1061 (E.D. Wis. 2010). If the contract which Northern Group claimed T4K breached was found void or invalid, Northern Group wanted to be able to seek recovery under the equitable doctrine of unjust enrichment. But now that I have rejected T4K's argument that the oral agreement the parties reached is not void under the statute of frauds, it is unclear why Northern Group's alternative claim for unjust enrichment should continue. The dispute that remains seems to be over the terms of the contract, not its existence. Under these circumstances, I conclude that the unjust enrichment claim should be dismissed so as to streamline

7

the pleadings and avoid unnecessary time and expense devoted to research and discovery that will have no bearing on the outcome of the case. Accordingly, T4K's motion to dismiss Northern Group's claim for unjust enrichment will be granted. Of course, if the legal or factual circumstances change, I am free to reconsider this ruling. *See* Fed. R. Civ. P. 54(b).

### C. Wis. Stat. § 134.93

Finally, Northern Group alleges that T4K is liable for payment of commissions due, plus exemplary damages of up to 200%, under Wis. Stat. § 134.93, for its failure to pay Northern Group's "independent sales representative" these commissions. An "independent sales representative" is "a person . . . who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission." § 134.93(1)(b). The statute defines "commission" as "compensation accruing to an independent sales representative for payment by a principal." § 134.93(1)(a). The commission rate can be calculated in one of two ways: (1) "as a percentage of the dollar amount of orders or sales made by the independent sales representative" or (2) "as a percentage of the dollar amount of profits generated by the independent sales representative." *Id*. The statute further explains when commissions are due to an independent sales representative. It provides in relevant part:

> (2) Commissions; when due.
>
> (a) Subject to pars. (b) and (c), a commission becomes due as provided in the contract between the principal and the independent sales representative.
>
> (b) If there is no written contract between the principal and the independent sales representative, or if the written contract does not provide for when a commission becomes due, or if the written contract is ambiguous or unclear as to when a commission becomes due, a

> commission becomes due according to the past practice used by the principal and the independent sales representative.
>
> (c) If it cannot be determined under par. (a) or (b) when a commission becomes due, a commission becomes due according to the custom and usage prevalent in the state for the particular industry of the principal and independent sales representative.

Wis. Stat. § 134.93(2). The statute indicates that a principal must give an independent sales representative "at least 90 days' prior notice of any termination" of the contract. § 134.93(3). When a contract is terminated, a principal "shall pay an independent sales representative all commissions that are due to the independent sales representative at the time of termination, cancellation, or nonrenewal of the contract between the principal and the independent sales representative." § 134.93(4).

T4K contends that Northern Group does not meet the statutory definition of an "independent sales representative." To repeat, an "independent sales representative" is "a person . . . who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission." § 134.93(1)(b). The parties do not dispute that a "person" under the statute may be a corporation. *See Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc.*, 252 Wis. 2d 544, 644 N.W.2d 236 (2002) (holding that Wis. Stat. § 134.93(a) "clearly and unambiguously includes corporations" in the definition of "independent sales representative"). Instead, T4K asserts that Northern Group is not an independent sales representative because it provided services to T4K to assist its development of relationships with retailers so that T4K could sell products to them and did not act as a commissioned sales person. But in its complaint, Northern Group alleges that it "would serve as a sales representative of goods, equipment and items manufactured and produced by Tech 4 Kids for sale to third-party retailers" in exchange for a commission based upon a percentage of the

9

total sales made by the principal to the third-party retailer. Compl. ¶¶ 12–13, ECF No. 1; *see also id.* ¶ 24 ("The parties established a valid, enforceable agreement pursuant to which Northern Group provided sales and marketing services to Tech 4 Kids in exchange for payment of commissions."). Viewing the facts in the light most favorable to the non-movant, as the court is required to do at this stage, Northern Group has sufficiently pleaded facts to show that it is an independent sales representative under § 134.93.

T4K also contends that the commissions sought by Northern Group do not fit within the statutory definition of "commissions." The statute provides that commissions are "compensation accruing to an independent sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales made by the independent sales representative or as a percentage of the dollar amount of profits generated by the independent sales representative." § 134.93(1)(a). T4K argues that Northern Group does not satisfy the first prong because, even though it alleges it acted as T4K's sales representative, it does not allege that it made any orders or sales. At most, T4K contends, Northern Group asserts that it secured contracts to sell T4K's products and it obtained commitments from retailers to purchase T4K's products in 2017 and 2018. But contracts to sell and commitments are not orders or sales. Because Northern Group's efforts did not result in binding orders or actual sales before it was terminated, T4K argues no commissions within the meaning of § 134.93 were due at the time the contract was terminated.

Whether Northern Group has a claim under § 134.93 depends on whether unpaid commissions were due at the time the agreement was terminated. When as here, there is no written contract, the statute requires that we look to "past practice" of the parties, and if past practice does not provide the answer, to "custom and usage within the industry." § 134.93(2). The parties were

apparently performing under their oral agreement since 2008. Did T4K pay commissions only upon completed sales? Or was a commission paid when a "commitment" was made by a retailer to purchase a particular quantity of T4K product? Was any such legally enforceable commitment procured by Northern Group before T4K terminated the agreement? The answers to these questions are not provided by the pleadings. I am therefore unable to determine from the pleadings whether Northern Group has a claim under § 134.93. T4K's motion to dismiss this claim will therefore also be denied.

## CONCLUSION

Based upon the foregoing analysis, Northern Group's motion to file a sur-reply (ECF No. 35) is **GRANTED**, T4K's motion for judgment on the pleadings (ECF No. 30) is **GRANTED** as to the claim for unjust enrichment. The motion is **DENIED** as to the remaining claims.

**SO ORDERED** this  10th  day of October, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
